Celia Waterman v. Commissioner.
Waterman v. Commissioner
Docket No. 80892.
United States Tax Court
T.C. Memo 1961-225; 1961 Tax Ct. Memo LEXIS 125; 20 T.C.M. (CCH) 1117; T.C.M. (RIA) 61225; August 10, 1961
*125 Thomas J. McManus, Esq., Union Trust Bldg., Pittsburgh, Pa., and Kenneth P. Simon, Esq., for the petitioner. Leo A. Burgoyne, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency in gift tax for 1955 in the amount of $13,484.02. The sole question presented is the fair market value of the shares on the date of the gift. Findings of Fact Some of the facts have been stipulated and are incorporated herein by reference. Petitioner is a resident of Pittsburgh, Pennsylvania. On September 29, 1955, petitioner gave 150 shares of the common stock of Maxcel Corporation to her daughter and 149 shares to her son. Petitioner filed a Federal gift tax return for the year 1955 with the district director of internal revenue for the twenty-third district of Pennsylvania, Pittsburgh, Pennsylvania. In this return she reported the shares given to her daughter as having a fair market value of $126.50 per share or an aggregate value of $18,975 and the shares given to her son as having the same fair market value resulting in an aggregate value of $18,848.50. The Commissioner determined that the 150 *126 shares given to the daughter had a fair market value of $63,450 and the 149 shares given to the son had a fair market value of $63,027. The Commissioner based these determinations on a fair market value of $423 for each share. Maxcel Corporation was organized in 1941 under the laws of Pennsylvania for the purpose of holding and operating real property. Maxcel Corporation had issued and outstanding 571 shares of $50 par value common stock, all of which petitioner owned prior to the gifts to her daughter and son. On September 29, 1955, and for at least two years prior thereto, Maxcel owned seven units of improved rental property which were designated on its books as follows: (1) Boyle Street (2) Jacksonia Street (3) Strauss Street (4) Susquehanna Street (5) Roselawn Avenue (6) Penn Avenue (7) Murdock Street All the above mentioned properties, except Murdock Street, were primarily multifamily dwellings or apartment houses. The Murdock Street property is a single-family dwelling used by Maxcel as its registration office and principal place of business. It is also the residence of the petitioner who pays a rental of about $900 per year to Maxcel. With the exception of *127 the Murdock Street and Roselawn Avenue properties, the properties are old and many are substandard units. The balance sheet of Maxcel for the year ending December 31, 1955, reads as follows: Cash
$ 34,428.56
Prepaid Expenses
803.33
Depreciable Assets
95,759.17
Less: Depreciation to Date
26,065.26
Net Depreciable Amount
$ 69,693.91
Land
21,116.66
TOTAL ASSETS
$126,042.46
Loan Payable
$ 10,500.00
Taxes Payable
297.26
Mortgage Payable
40,626.34
Capital Stock
28,550.00
Earned Surplus
46,068.86
TOTAL LIABILITIES AND
NET WORTH
$126,042.46
The gross income, expenses and profit for the years 1951 through 1955 from the rental property were as follows: Gross
Year
Income
Expenses
Profit
1951
$27,282.35
$23,162.89
$4,119.46
1952
28,667.88
25,204.95
3,462.93
1953
34,046.73
26,701.42
7,345.31
1954
38,380.53
34,724.99
3,655.54
1955
38,447.23
32,731.71
5,715.52
The total earnings of Maxcel from all sources for the same period after Federal income taxes were: Total
Earnings
Year
Earnings
Per Share
1951
$5,296.93
9.28
1952
2,894.52
5.07
1953
5,605.89
9.82
1954
4,930.80
8.64
1955
4,000.86
7.01
*128 Opinion The question presented is what is the fair market value of the Maxcel shares. "Fair market value is defined as the price at which property would change hands between a willing buyer and a willing seller, neither of whom is under any compulsion to buy or to sell and both of whom are reasonably well informed as to the facts having a bearing on value." . The fair market value of corporate stock which is closely held by members of a single family is a question of fact to be resolved in light of all the pertinent evidence. . The divergence of values ascribed to the shares in the instant case results from the utilization by the parties of two different methods of valuation. The Commissioner contends that the value of the underlying assets of Maxcel is the proper base. The corporation, as disclosed by the findings of fact, was formed for the purpose of holding and operating real estate and consistent with this corporate purpose its assets primarily consist of real property. The testimony of a real estate appraiser called by the Commissioner set *129 the value of this real property at $277,400 which when combined with the other assets resulted in an aggregate asset valuation of $312,631.89. After subtracting the corporate liabilities the Commissioner determined the fair market value of the corporate stock to be $423 per share. On the other hand petitioner to substantiate the value of $126.50 per share which she designated as the fair market value in the Federal gift tax return produced an expert witness who valued the shares on a times earnings basis and arrived at a valuation of $100 per share. There is no established controlling method for arriving at the value of stock. * * * The problem of a fair determination of the value of stock must be solved by the exercise of sound judgment through the application of a method which is fair and proper under the facts and circumstances as they may appear in each particular case in which the problem is presented. * * * . In the case before us we do not think that "one element alone should * * * be considered as determinative." (C.A. 9, 1955), affirming a Memorandum *130 Opinion of this Court. We think that the method proposed by the Commissioner, namely a valuation based solely on the value of the underlying assets, fails to take into account the fact that the rental dwellings were for the most part old and substandard resulting in high expenses and a correspondingly low return. Such a factor would seem to have a definite "bearing on value" as a projection of such expenses in light of historical costs does not indicate any substantial decrease. Conversely, petitioner's witness who valued the stock on a times earnings basis cited as criteria the sale of shares of stock of large industrial corporations the earnings of which depend not only on its physical assets but on such additional factors as the good will of the business, the management and the position of the company in the industry. Maxcel is not an industrial corporation but a real estate corporation which derives its earnings from rentals. As we see it, a valuation of the shares of Maxcel by reference to its earnings should also include a consideration of the underlying assets due to their direct relationship to the earnings. Therefore, in arriving at our decision, we have weighed the *131 value and nature of the underlying assets in conjunction with the earnings generated by these corporate assets and we find that the stock had a fair market value on the date of the gift of $250 per share. Decision will be entered under Rule 50.